UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| ELIZABETH JACOBSEN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 05 C 2378 |
| ILLINOIS COMMUNITY COLLEGE DISTRICT 525 and JOLIET JUNIOR COLLEGE, | ) | Judge George M. Marovich |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Elizabeth Jacobsen ("Jacobsen") filed a three-count complaint against defendants Illinois Community College District 525 and Joliet Junior College ("JJC"). In Count I, Jacobsen alleges disparate treatment in violation of the Age Discrimination in Employment Act ("ADEA"). In Count II, Jacobsen alleges disparate treatment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). In Count III, Jacobsen alleges breach of contract. Defendants have moved for summary judgment. For the reasons set forth below, the Court grants in part and denies in part defendants' motion.

### I. Background

Unless otherwise noted, the following facts are undisputed.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. *See Thomas v. CitiMortgage, Inc.*, Case No. 03 C 6177, 2005 WL 1712266 at *1 n. 1 (N.D. Ill. Jul. 20, 2005); *Perez v. City of Batavia*, Case No. 98 C 8226, 2004 WL 2967153 at *10 (N.D. Ill. Nov. 23, 2004); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are argued but do not conform with the rule are not considered by the Court. Where one party supports a fact with admissible evidence and the other party denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). This, however, does

Defendant JJC is the oldest public community college in the United States. It is part of defendant Illinois Community College District 525, which is one of the 40 community college districts under the Illinois Board of Higher Education.

JJC's education programs are pre-baccalaureate. They include occupational education, adult education, literacy programs and work force development. JJC also offers programs for students planning to transfer to four-year colleges and universities. As of the fall of 2005, JJC's enrollment was 13,022. At that time, thirty-eight percent of its students were full-time and 62% were part-time. JJC students are taught by 186 full-time and 490 part-time faculty members. Among JJC's departments is the Computer Information Office Systems ("CIOS") department, which is made up of three divisions: Computer Information Systems (programming), Office Systems and Health Information Management.

### *Hiring in the CIOS Department*

The CIOS department, in the spring of 2003, needed a new instructor. The opening was due to the retirement of Patricia Sterr, whom JJC employed as a tenured instructor in the CIOS Department. Due to Sterr's retirement and a five-or-six-year history of stable or increasing enrollment in the CIOS Department, JJC advertised for a full-time tenure-track instructor in the CIOS Department. The job posting stated that the position required a "[m]inimum of a Masters Degree in Computer Science, Information Systems, MBA or a related field." The posting also noted that years of experience "might" be substituted for education but that a Master's Degree was "required for continued employment."

It is undisputed that, at JJC, a Master's Degree was not a requirement for being hired into a tenure-track position but it was necessary for attaining tenure. For example, CIOS instructors

---

not absolve the party asserting a fact of its initial burden of putting forth admissible evidence to support its facts. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

David Buckley, Richard McNeil and Angela Sullivan commenced their tenure-track positions before they had obtained their respective Master's Degrees. Two male faculty members over the age of forty (Adoph Scheiwe and Wilson Stroud) commenced their employment with JJC with one-year temporary contracts. Stroud ultimately obtained tenure in his fourth year, after he completed his Master's Degree. In Schweie's case, JJC informed him in February of his first year that his contract would not be renewed. When a tenure-track position was posted for the following year, Schweie re-applied and was granted the tenure-track position for his second year.

The CIOS Department's practice for hiring faculty is to form a search committee made up of the Department's faculty members. Those faculty members interview candidates and rank them. The chair, Ram Raghuraman ("Raghuraman") of the CIOS Department makes a recommendation to JJC's Vice President of Academic Affairs, Denis Wright ("Dr. Wright"). Dr. Wright, who is authorized to accept, reject or modify the recommendations made by the various departments, makes a hiring recommendation to the Board of Trustees for its approval.

### *Selection of Jacobsen*

Plaintiff Elizabeth Jacobsen was among the forty or fifty applicants for the CIOS position advertised in the spring of 2003. When Jacobsen applied for the position at JJC, she had completed at Governor's State University half of the work necessary for a Master's Degree. Among her experience, Jacobsen had taught computer programming courses as a part-time adjunct professor from 1991 to 2002. Jacobsen had taught at JJC, College of DuPage, and North Central College. She had also worked in computer consulting and training for businesses. When she applied for the full-time tenure track position at JJC, Jacobsen was fifty-four years old.

From the forty or fifty applicants for the advertised tenure-track position, the search committee selected five or six–including Jacobsen–to call in for interviews. Ultimately, two candidates–Jacobsen and a man–accepted the offer to interview and to make presentations before

the search committee. Jacobsen presented to the search committee in June 2003. Adolph Scheiwe ("Scheiwe"), a committee member, thought Jacobsen was an acceptable candidate. Raghuraman thought Jacobsen's presentation was good. Raghuraman had a good opinion of Jacobsen with respect to her previous stint as a part-time adjunct at JJC.

After the interviews, Raghuraman and Wilson Stroud ("Stroud"), a search committee member, discussed the options. Stroud suggested making the position a temporary position and then re-opening the position the following year, when the department might have a better selection. Stroud said, "[I]t would be nice to get somebody in here like Angela [Sullivan]. We don't want to bring somebody on board [who is] here for the health benefits." Raghuraman did not respond, and, during the conversation, Stroud and Raghuraman did not discuss age.

Once the search committee had completed its work, Raghuraman met with Dr. Wright. Raghuraman told Dr. Wright that the committee was not pleased with the candidates. Dr. Wright and Raghuraman agreed that Jacobsen was not the caliber of candidate they wanted to hire for a tenure-track position. Raghuraman was concerned that if they did not hire someone, the position could be transferred to another department, making it harder for them to hire someone for a tenure-track position the following year. Wright and Raghuraman preferred Jacobsen to the male candidate who the committee had interviewed. They decided to offer Jacobsen a one-year temporary position and re-open the search the following year.

The parties agree that when Dr. Wright offered Jacobsen a position, he asked her whether she would have her Master's Degree completed within three years and told her that tenure was contingent upon the completion of her Master's Degree. The parties dispute the rest of the conversation. According to defendants, Dr. Wright offered plaintiff a one-year temporary position and told her that if she finished her Master's Degree within the year, she would be the leading candidate when the position re-opened for the following year. Plaintiff put forth

evidence that she was not told during that conversation that she was being hired for a temporary position.

In any case, Dr. Wright wrote to the Director of Human Resources a memo in which he stated that he was planning to recommend Jacobsen to the Board of Directors for a one-year, temporary position. Dr. Wright noted in the memo that he intended to hire her for a tenure-track position the following year if she completed her Master's Degree and received a satisfactory evaluation. On July 8, 2003, the Board of Trustees approved Jacobsen for a "one-year appointment."

JJC sent Jacobsen a contract signed by J.D. Ross, the President of Illinois Community College District No. 525, and asked her to sign and return the contract. Jacobsen signed the contract. The contract signed by the parties reads, in relevant part:

## JOLIET JUNIOR COLLEGE

You are hereby appointed to the (tenure track) staff of Illinois Community College District No. 525 for the 2003-2004 academic year as indicated in the official calendar approved by the Board of Trustees with the classification of: ASSISTANT PROFESSOR COMPUTER INFORMATION SYSTEMS [sic]

COLUMN B STEP 4 BASE SALARY: $38,322.00. Effective date of this contract is August 18, 2003. This contract of employment will expire May 14, 2004. Fringes [sic] benefits are 15 sick days and 3 personal leave days.

It is understood that this appointment is subject to the provisions of the Illinois Community College Act, to such sections of the school code of Illinois (as amended) as may apply, and to all policies, rules and regulations of the Board of Illinois Community College District No. 525, Will, Grundy, Kendall, LaSalle, Kankakee, Livingston, and Cook counties, State of Illinois the legal governing Board of Community College District No. 525.

This appointment is subject to the following provisions: "Each person employed on a temporary or term basis shall be given a statement in writing of the conditions and the period of his appointment. Appointment or reappointments to any such position shall create no presumption of a right to subsequent term appointment or to a permanent appointment."
(The above statement fulfills the requirements of written notification.)

> If the terms of this contract are found to be in violation of Board Policies or any negotiated agreement between the Board and an employee group, the Board reserves the right to make necessary adjustments.
>
> It is further understood that this letter when returned with your signature is a binding contract pending final confirmation by the Board of Trustees of Illinois Community College District No. 525. The copy is for your files.

Jacobsen understood that she was not guaranteed a second year of employment and that her contract had to be renewed annually.

### *Jacobsen's Employment*

With Jacobsen on board, the CIOS Department had fourteen full-time faculty members. The faculty included five women and nine men. Twelve of the faculty members were over the age of forty. Two members, Angela Sullivan (aged 27) and Sandra LaFevers (aged 37) were under the age of forty.

During the 2003-2004 school year, Jacobsen attended an eight-week series of new faculty seminars presented by Dr. Wright. JJC required all new faculty–whether or not the faculty member had signed a tenure-track contract–to participate in the seminars because even faculty members on one-year contracts might become tenured. At one of the seminars, Dr. Wright explained that most instructors earn tenure. As a result of the seminars, Jacobsen drafted an outline of her goals and objectives for the school year. The first goal stated, "Complete a Masters degree in Computer Science program within one year. The only reason this would not happen would be if a required course is not offered in the correct timeframe." Jacobsen did not complete her Master's Degree by the end of the 2003-2004 school year.

Jacobsen's performance in the 2003-2004 school year earned her positive reviews and evaluations from the Human Resource Director and Raghuraman. Still, in November 2003, Raghuraman informed Jacobsen that her one-year contract would be terminated at the end of the school year.

Raghuraman turned out to be right. Dr. Wright recommended to the Board of Trustees that they terminate Jacobsen's contract at the end of the year and re-open the position. On February 17, 2004, the Board of Trustees adopted Dr. Wright's recommendation with respect to Jacobsen. On February 26, 2004, President Ross sent by email a memo summarizing the minutes of the February 17, 2004 Board of Trustees meeting. When Jacobsen opened the email on March 1, 2004, she learned that her contract would not be renewed.

Dr. Wright told Jacobsen that the position would be re-posted and that she could re-apply. But by May, JJC still had not posted the position. Instead, President Ross offered Jacobsen a one-year temporary position for the 2004-2005 school year. The contract President Ross and Jacobsen signed for the 2004-2005 school year stated that the position was a "temporary, one-year" appointment and that it would expire on May 13, 2005. In February 2005, the Board of Trustees notified Jacobsen by letter that her contract would not be renewed for the 2005-2006 school year.

Meanwhile, the student enrollment at JJC had changed. As of May 2005, student enrollment in Computer Information classes was down significantly, approximately 33% over three years. On the other hand, enrollment in Heath Information Management ("HIM") classes was growing. Dr. Wright transferred the position formerly held by Jacobsen to the HIM division, and re-posted the position. JJC hired Carla Haas, a 39-year-old woman, for the new HIM position. The CIOS Department also hired Deborah Dystra, a 52-year-old woman, for a full-time, tenure-track position in the Office Systems division.

Jacobsen filed suit in this Court, and defendants have moved for summary judgment.

## II. Summary judgment standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. Jacobsen's disparate treatment claims

In Counts I and II, Jacobsen asserts that JJC failed to hire her for a tenure-track position in the spring of 2003 due to her age or sex, respectively. This is the only employment action Jacobsen challenges in this case. Jacobsen argues that defendants' failure to hire her for a tenure-track position in the spring of 2003 violates Title VII and the ADEA because defendants took the action due to her sex and/or age.

Pursuant to Title VII of the Civil Rights Act of 1964, it "shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire . . . any individual . . . because of such individual's race, color, religion sex, or national origin." *See* 42 U.S.C. § 2000e-2(a). Likewise, the Age Discrimination in Employment Act makes it "unlawful for an employer–(1) to fail or refuse to hire . . . any individual . . . because of such individual's age." *See* 29 U.S.C. § 623(a)(1).

Because Jacobsen provides no direct evidence of discrimination, she follows the indirect method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To make out a *prima facie* case in the failure to hire context, a plaintiff must establish that (1) she is a member of a protected class; (2) she applied for and was qualified for an open position; (3) she was rejected; and (4) the employer filled the position with a person not in the plaintiff's protected class, or the position remained open. *Rudin v. Lincoln Land Comm. College*, 420 F.3d 712, 724 (7th Cir. 2005). The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that she was "rejected under circumstances which give rise to an inference of unlawful discrimination" and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6. If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin*, 420 F.3d at 724. "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724. "To do this, the employee must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

*Prima facie case*

In this case, Jacobsen easily makes out the first two elements of a *prima facie* case. First, she is a member of two protected classes: she is female (protected under Title VII) and she is over the age of forty (protected under the ADEA). Second, she applied for and was qualified for an open position, as evidenced by the fact that she was hired for a position.

Things get interesting with respect to the third and fourth elements of the *prima facie* case. Theoretically, it would be difficult for Jacobsen to show that she was rejected a the 2003-2004 tenure-track position that remained open when, in fact, she was selected and signed a contract that stated she was in a tenure-track position. Likewise, it would be difficult to show that she was passed over for someone outside her protected class when she was the one selected and when she was selected over a male. But what is interesting about this situation is that *defendants vehemently* argue that Jacobsen was *not* hired for the tenure track position. Rather, defendants argue (and put forth evidence) that Jacobsen was rejected for the tenure-track position and instead hired for a one-year temporary position because (1) they decided to re-post the tenure-track position the following year and (2) they mistakenly asked Jacobsen to sign a tenure-track contract. Defendants flat-out admit, "[Jacobsen] was hired as a 'place keeper' for the position, so that the department would have more time to find a suitable tenure-track candidate." (Defendants' Brief at 10). If by "suitable" candidate, defendants meant "male" or "young" then their decision would violate Title VII or the ADEA, respectively.

Here, then, the evidence shows that plaintiff was rejected for the tenure-track position while being selected for a one-year, temporary position with a lesser title. She was twice selected for the temporary position, and the defendants kept the more prestigious position (the tenure track position) open for two years until the 2005-2006 school year, when they hired a 39-

-10-

year-old woman. Plaintiff has put forth sufficient evidence that she was rejected for the tenure track position "under circumstances which give rise to an inference of discrimination" which is what *Burdine* requires. The circumstances give rise to an inference of age discrimination because the tenure-track position remained open for two years, at which time it was given to a woman under the age of forty. In addition, plaintiff put forth evidence that individuals (specifically Angela Sullivan and Sandra LaFevers) under the age of forty were hired directly into tenure-track positions. Accordingly, plaintiff has made out a *prima facie* case of age discrimination.

Defendants, however, argue that the decision not to hire plaintiff for a tenure-track position for the 2003-2004 school year is not actionable because the fact that plaintiff was given a similar position (the temporary position) means that she did not suffer an "adverse employment action." (One wonders, given defendants argument that the positions were no different, why defendants so vehemently argue that plaintiff was not hired for a tenure-track position for the 2003-2004 year. But it is immaterial.) Defendants "adverse employment action" argument fails because plaintiff need not establish she suffered an "adverse employment action" in order to make out a *prima facie* case of unlawful disparate treatment under either the ADEA or Title VII. Defendants have lost track of what is prohibited by the ADEA (and Title VII for that matter) under the clear terms of the statute. When courts require an "adverse employment action," it is not because the ADEA (or Title VII) prohibits "adverse employment actions;" it does not. The reason courts speak of "adverse employment actions" is because "adverse employment action" has been a useful way to define the statutory term "discriminat[ion]" in the terms and conditions of employment. *See Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006) ("The statutory

term is 'discrimination,' and a proxy such as 'adverse employment action' often may help to express the idea . . . Helpful though a judicial gloss such as 'adverse employment action' may be, that phrase must not be confused with the statute itself"). Discrimination, however, is not the only type of disparate treatment explicitly prohibited by the ADEA and Title VII. The ADEA and Title VII *each* explicitly prohibits *not just* "discriminat[ion]" but also the "fail[ure] or refus[al] to hire." *See* 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). By putting forth evidence (which defendants have admitted) that defendants failed to hire plaintiff for the tenure-track position for the 2003-2004 school year, plaintiff has made out a *prima facie* case of disparate treatment under the ADEA.

Unlike the ADEA claim, the circumstances do not give rise to an inference of *sex* discrimination under Title VII. This is true for two reasons. First, when Jacobsen was selected for the non-tenure position for the 2003-2004 school year, she was selected over a male candidate. Second, when defendants eventually filled the tenure-track position, they chose another woman. Accordingly, Jacobsen cannot make out a *prima facie* case of sex discrimination. Defendants are entitled to judgment as a matter of law on plaintiff's Title VII claim. The Court grants defendants summary judgment on Count II.

### *Legitimate, non-discriminatory reason*

Plaintiff's ADEA claim, on which she established a *prima facie* case of discrimination, continues to the next stage, where the Court considers whether defendants have articulated a legitimate, non-discriminatory basis for the decision. The reason defendants offer is that plaintiff "was not of tenure caliber." (Defendants Brief at 13). Dr. Wright testified that he and Dr. Raghuraman decided plaintiff was "not the caliber that we wanted to hire for the . . . tenure-

track position." Defendants do not say what about plaintiff made her "not of tenure caliber." The Court has scoured the record and the briefs for some evidence of what defendants meant when they described plaintiff as not "a suitable tenure-track candidate." (Defendants' Brief at 10). The Court finds none.

To be sure, the defendants' burden here is not onerous; but nor is it meaningless. The Supreme Court explained the defendants' burden (of production, not persuasion) in *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981):

> [T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. . . . Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext. The sufficiency of defendant's evidence should be evaluated by the extent to which it fulfills these functions.

*Burdine*, 450 U.S. at 255-256. The "employer's burden of production means that it must introduce facts sufficient in principle to explain what happened." *Mister v. Illinois Central Gulf RR Co.*, 832 F.2d 1427, 1434-1435 (7th Cir. 1987) ("When the defendant pronounces a reason unrelated to the plaintiff ('a midget can't do the job', followed by silence on the plaintiff's height), it has not adequately articulated a neutral reason within the meaning of *Burdine*.").

This is that extremely rare situation when the defendant has failed to meet its burden under *Burdine* of articulating a legitimate, non-discriminatory reason which "frame[s] the factual issue with sufficient clarity so that the plaintiff [has] a full and fair opportunity to demonstrate pretext." The defendant simply fails to state what it is about plaintiff that made her not "suitable" for a tenure-track position and not of tenure-track "caliber." It is impossible for plaintiff to show that that reason is pretext because it is impossible to know why she is not

suitable. Is it her height (which is a legitimate, non-discriminatory reason)? Is it her poor teaching skills (which is a legitimate, non-discriminatory reason)? Is it her age (which is an unlawful, discriminatory reason)? The reason articulated does not qualify as "non-discriminatory" because it is as consistent with discrimination as non-discrimination. *See Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004) ("a hiring official's subjective belief that an individual would not 'fit in' or was 'not sufficiently suited' for a job is at least as consistent with discriminatory intent as it is with nondiscriminatory intent: The employer just might have found the candidate 'not sufficiently suited' *because* of a protected trait such as age, race, or engaging in a protected activity. We hold as a matter of law that justifying an adverse employment decision by offering a content-less and nonspecific statement, such as that a candidate is not 'sufficiently suited' for the position, is not specific enough to meet a defendant employer's burden of production under *McDonnell Douglas*. It is, at bottom, a non-reason.").

Because defendant has failed to meet its burden of articulating a legitimate, non-discriminatory reason for its allegedly unlawful decision not to hire plaintiff for a tenure-track position for the 2003-2004 year, defendant is not entitled to judgment as a matter of law on plaintiff's claim for discrimination under the ADEA. The Court denies defendant's motion for summary judgment with respect to Count I.

### B. Jacobsen's breach of contract claim

In her final count, Jacobsen asserts a claim for breach of contract. The four and one half lines in her brief that Jacobsen devotes to the breach of contract claim shed little light on why she thinks defendants breached a contract.

A federal court considering a state law claim under its supplemental jurisdiction applies state substantive law. *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002). The duty of a federal court applying state substantive law is "to predict what the state's highest court would do if presented with the identical issue." *Taco Bell Corp. v. Continental Casualty Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004). The elements of a breach of contract claim under Illinois law are: offer, acceptance and consideration. *Smith v. Jones*, 497 N.E.2d 738, 740, 113 Ill.2d 126, 132 (Ill. 1986).

To the extent Jacobsen is claiming that defendants breached the 2003-2004 contract by not renewing the contract for another year, the claim necessarily fails. The contract expressly expired on May 14, 2004. Nothing in the contract promised employment the following year, although defendants did, in fact, employ Jacobsen for the 2004-2005 school year. Accordingly, plaintiff cannot establish a breach of the 2003-2004 contract. For the same reasons, she cannot establish a breach of the 2004-2005 contract.

Rather than a breach of the contracts she signed, however, plaintiff seems to be asserting a breach of an asserted "property right" to employment under a "common law of employment" theory. Federal law, of course, recognizes a private right of action under § 1983 for deprivations of property without due process of law. The Seventh Circuit has recognized a due process cause of action with respect to a property interest in employment where a public employee "can demonstrate the existence of an unwritten 'common law of employment' providing a right to be terminated only for cause." *Crull v. Sunderman*, 384 F.3d 453, 464 (7th Cir. 2004). Putting aside the fact that plaintiff failed to give any notice in her complaint that she was pursuing a claim under § 1983, plaintiff has not put forth any evidence that she was denied due process.

Accordingly, to the extent plaintiff was attempting to make out a due process claim, she has failed as a matter of law. Nor does her theory prevail under Illinois law. Plaintiff points to no case (and the Court is aware of none) where an Illinois court found a breach of contract based on a "common law of employment" instead of a meeting of the minds. In any case, the plaintiff has failed to put forth evidence from which a reasonable jury could conclude that defendants agreed to terminate her employment only for cause. To the contrary, the undisputed evidence is that she signed a contract for a single school year.

The plaintiff has failed to put forth sufficient evidence from which a reasonable jury could find a breach of contract. Accordingly, defendants are entitled to judgment as a matter of law. The Court hereby grants defendants summary judgment on Count III.

## IV. Conclusion

For the reasons set forth above, the Court denies in part and grants in part defendants' motion for summary judgment. The Court denies defendants' motion for summary judgment with respect to Count I. The Court grants defendants summary judgment on Counts II and III.

This case is set for status on December 19, 2006 at 11:00 a.m.

ENTER:

George M. Marovich
United States District Judge

DATED: November 21, 2006